**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MISSOURI**
**WESTERN DIVISION**

| | | |
|---|---|---|
| RACHEL BUCHHOLZ, on behalf of herself and all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | Case No. |
| v. | ) ) | **JURY TRIAL DEMANDED** |
| GENERAL MOTORS LLC, | ) ) | |
| Defendant. | ) ) | |
| _____ | ) | |

## CLASS ACTION COMPLAINT

Plaintiff Rachel Buchholz, on behalf of herself and all others similarly situated, brings this action for violation of the Missouri Merchandising Practice Act ("MMPA"), Mo. Rev. Stat. §§ 407.010 *et seq.*, against Defendant General Motors LLC ("GM").

### NATURE OF THE CASE

1.      During the class period as alleged herein, GM designed, manufactured, distributed, marketed, sold, and leased Chevrolet Equinox and GMC Terrain vehicles with 2.4-liter engines ("Class Vehicles" or "Vehicles") to Plaintiff and Class Members. These engines were denominated within GM as "LEA" engines (also referred to herein as the "EcoTech 2.4L" engine).

2.      Engine oil, or motor oil, functions as an essential lubricant for the moving parts in internal combustion engines.  It creates a film separating surfaces of adjacent moving parts to minimize direct contact, thereby decreasing heat caused by friction and reducing wear.  Engine oil also has important cleaning and sealing functions and serves as an important medium for dissipating heat throughout the engine.  As a result, the Class Vehicles need the proper amount of engine oil in order for their engines and related parts to function properly and safely.

3.      Modern automobile engines are not engineered to flow substantial quantities of oil

1

into combustion chambers. When faulty engines permit more than *de minimis* amounts of oil to the combustion chamber, this leads to a host of serious problems, including prematurely low levels of engine oil, low oil pressure, lack of engine lubricity, engine knock, spark plug fouling and knock, and major damage to other critical engine parts.

4. Prior to July 2015, when Plaintiff purchased a Chevrolet Equinox for her personal use, GM knew the Class Vehicles contained one or more design defects contained in the Class Vehicles' engines that cause them to be unable to properly utilize the engine oil and, in fact, to improperly burn off and/or consume abnormally high amounts of oil (the "Oil Consumption Defect").

5. The primary cause of the Oil Consumption Defect was the design of faulty piston and piston ring assemblies, including both "compression" and "oil" rings. Additionally, GM installed low-tension oil rings in these engines that do not maintain sufficient tension to keep oil in the crank case within design specifications. Individually or taken together, the EcoTec 2.4L piston rings failed to maintain a sufficient seal within the crankcase.

6. The Class Vehicles incorporate a system that is supposed to warn drivers of low oil pressure caused by low engine oil levels. This system is referred to in this Complaint as the "Oil Pressure Warning" ("OPW") system. The OPW system is supposed to warn drivers of low levels of engine oil in two ways: First, the OPW system is supposed to display a textual warning on an alphanumeric display that GM calls the "Driver Information Center" ("DIC"), located in the dashboard in the instrument cluster immediately behind the steering wheel and in front of the driver. Second, the OPW is supposed to display an illuminated red image of an oil canister on the DIC. This illuminated warning light, called the "Engine Oil Pressure Light" in the Class Vehicles' manuals, signifies "that oil is not flowing through the engine properly" and that "[t]he vehicle

2

could be low on oil."[1] But the OPW's warnings do not provide any indication as to when the oil pressure in the Class Vehicles falls to levels low enough to damage internally lubricated parts or cause engine failure. Similarly, the Engine Oil Pressure Light illuminates well past the time when the Class Vehicles are below a critical oil level. Even if the Class Vehicles did adequately warn drivers of critically low oil conditions (which they do not), any such warnings would not prevent the damage caused by the Oil Consumption Defect.

7.      Further contributing to the excessive oil loss and variety of engine damage problems caused by the Oil Consumption Defect in the Class Vehicles is GM's implementation of a defective oil life monitoring system. This system is referred to in this Complaint as the "Oil Life Monitoring" ("OLM") system. This system monitors engine conditions such as revolutions and temperature to estimate deterioration in oil quality and the remaining useful life of the engine oil following an oil change. After each oil change, the OLM system must be reset manually following each oil change. In each Class Vehicle, because the Oil Consumption Defect causes the engine oil to be consumed at an increased rate, the OLM system fails to advise drivers when insufficient oil remains in their vehicles. The OLM's function—to measure remaining oil life following an oil change based upon the regular estimated rate of oil consumption—is undermined by the Oil Consumption Defect, thereby rendering the OLM system useless. In fact, reliance on the OLM system instead encourages owners to drive with a false sense of security after their oil levels fall dangerously low, because the OLM cannot display the correct remaining oil life based upon the increased defective oil consumption rate. Thus, the Class Vehicles provide no notice to drivers of the low oil levels who first learn of the problems when the vehicles stall or experience failures. The result is a system that causes drivers to unknowingly travel hundreds or thousands of miles

---

[1] GM 2015 Owner's Manual, at 5-19-5-20.

with inadequate engine lubricity levels, wearing out and damaging moving internal engine components—a very serious problem in light of the Oil Consumption Defect causing excessive oil loss the Class Vehicles.

8.      Problems associated with excessive oil consumption and the Oil Consumption Defect include, but are not limited to: unanticipated engine shutdowns, engine stalls, engines running excessively hot, spark plug fouling, engine misfires, unexpected loss of power, vehicle jerking, and other problems as discussed herein. Inadequate engine oil levels resulting from the Oil Consumption Defect have the potential to cause engine fires. The failure of the OPW and OLM systems to properly function and adequately warn the driver of the dangerously low oil levels amplifies the potential problems and dangers caused by the Oil Consumption Defect.

9.      These problems create a substantial safety risk and, therefore, the Class Vehicles do not provide for safe and reliable transportation.

10.      The Oil Consumption Defect is a substantial safety concern because it  causes excessive oil consumption that cannot be reasonably anticipated or predicted, and causes the engine to run while dangerously low on engine oil. The Oil Consumption Defect is unreasonably dangerous because it can cause engine failure while the Class Vehicles are in operation at any time and under any driving conditions or speeds, thereby placing drivers, passengers, and the public at risk of accidents and injury.

11.      Indeed, as described herein, Plaintiff's vehicle ceased operation multiple times while she was in transit as a direct result of the Oil Consumption Defect.

12.      The Oil Consumption Defect will cause all Class Vehicles to consume unacceptably high amounts of engine oil, the rate of oil consumption for Class Vehicles can be as high as one quart of oil per 1,000 miles driven. The Oil Consumption Defect requires the addition of substantial

4

amounts of oil between scheduled oil changes to prevent engine damage.

13.     Plaintiff and Class Members reasonably expected that their Class Vehicles would not experience excessive oil consumption during the vehicles' foreseeable and normal usage, including, but not limited to, the expectation that the Class Vehicles would not require unreasonably frequent oil changes/additions between scheduled oil changes and that the Class Vehicles would not suffer from a dangerous defect that could cause the Class Vehicles to unexpectedly shut off, seize, stall, lose power, or catch fire during operation, creating the potential for accidents and injuries.

14.     In particular, Plaintiff and reasonable purchasers of an American-manufactured four-cylinder vehicle such as the Class Vehicles reasonably do not expect their vehicles to consume more than one quart of oil between regularly scheduled oil changes.

15.     Prior to purchasing the Class Vehicles, Plaintiff and Class Members did not know that the Class Vehicles suffered from the Oil Consumption Defect. GM did not disclose the Defect, nor did GM notify or instruct its authorized dealers to disclose the defect to Class Vehicle owners and prospective purchasers. Plaintiff and Class Members therefore had no reason to suspect that the Class Vehicles' engines would require supplemental oil to be added between regularly scheduled oil changes, as well as related repairs to address the defects costing hundreds or thousands of dollars.  Plaintiff and Class Members would not have purchased the Class Vehicles if they knew about the Oil Consumption Defect, nor would any reasonable consumer purchase the Class Vehicles with this knowledge.

16.     GM knew, was on notice, and/or should have known, and was therefore reckless or deliberately indifferent in failing to conclude, that the Class Vehicles are defective and suffer from the Oil Consumption Defect and are not fit for their intended purpose of providing consumers with

safe and reliable transportation.  In particular, as discussed herein, the vehicles are often inoperable, useless and unsafe due to the Oil Consumption Defect. Nevertheless, GM actively concealed and failed to disclose the Oil Consumption Defect to Plaintiff and Class Members at the time they purchased or leased their Class Vehicles and thereafter.

17.     As detailed in this pleading, GM actively concealed the Oil Consumption Defect from Plaintiff and Class Members since the time they purchased or leased their Class Vehicles. GM's concealment caused Plaintiff and Class Members to experience the Oil Consumption Defect throughout the life of the Class Vehicles.

18.     Many owners of Class Vehicles suffer engine failure as a result of the Oil Consumption Defect. Resale value of the Class Vehicles is greatly diminished, or nonexistent, due to the Oil Consumption Defect.  Plaintiff was specifically told by the service department of an authorized GM dealer that she would have difficulty trading in or reselling her Chevrolet Equinox because of the defect.

19.     Despite notice of the Oil Consumption Defect from various internal and external sources, GM has not recalled the Class Vehicles or otherwise warned Class Members of the problem, has not offered all of its customers a suitable repair or replacement free of charge, has not replaced defective EcoTech 2.4L engines or authorized full repair of all internal and external parts damaged by the Defect, and has not offered to reimburse Class Vehicle owners and leaseholders who incurred costs related to the Defect, including, but not limited to, costs for inspections, diagnosis, repairs, and unreasonably frequent oil changes/additions between regularly scheduled oil changes.

20.     As a result of GM's omissions, Plaintiff and Class Members have suffered ascertainable losses of money, property, and/or of value of their Class Vehicles.

6

## CITIZENSHIP OF PARTIES

21.     Plaintiff Rachel Buchholz is a resident and citizen of the State of Missouri.

22.     Defendant General Motors LLC is a Delaware limited liability company with its principal place of business located at 300 Renaissance Center, Detroit, Michigan. General Motors LLC is a citizen of the States of Delaware and Michigan.

23.     The sole member and owner of General Motors LLC is General Motors Holdings LLC. General Motors Holdings LLC is a Delaware limited liability company with its principal place of business in the State of Michigan. General Motors Holdings LLC is a citizen of the States of Delaware and Michigan. The sole member and owner of General Motors Holdings LLC is General Motors Company. General Motors Company is a Delaware corporation with its principal place of business in the State of Michigan. General Motors Company is a citizen of the States of Delaware and Michigan.

24.     GM, through its various entities, including Chevrolet, designs, manufactures, markets, distributes, warrants and sells its vehicles in this District and multiple other locations in the United States and worldwide. GM and/or its agents designed, manufactured, and installed the GM engine systems in the Class Vehicles. GM also developed and disseminated the owner's manuals, warranty booklets, advertisements, and other promotional materials pertaining to the Class Vehicles.

## JURISDICTION AND VENUE

25.     This Court has jurisdiction over this action under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). There are at least 100 members in the proposed class, the aggregated claims of the individual Class Members exceed the sum or value of $5,000,000.00 exclusive of interest and costs, and Members of the Proposed Class are citizens of states different

from Defendant.

26.     This Court may exercise jurisdiction over GM because, through its business of distributing, selling, and leasing the Class Vehicles in this District, GM has established sufficient contacts in this District such that personal jurisdiction is appropriate.

27.     Venue is proper in this District under 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to Plaintiff's claim occurred in this District. Specifically, Plaintiff's Class Vehicle was purchased in this District.

## FACTUAL ALLEGATIONS

### I.     PLAINTIFF'S EXPERIENCE

28.     In July 2015, Plaintiff Rachel Buchholz purchased a new 2015 Chevrolet Equinox LT from Reed Chevrolet, located in Missouri.

29.     Plaintiff regularly serviced and maintained the vehicle since the time of purchase. All factory-recommended service and maintenance has been performed by Reed Buick GMC in Kansas City, Missouri.

30.     Plaintiff began noticing problems caused by the Oil Consumption Defect in November 2021, around Thanksgiving. While Plaintiff was picking up her daughter from daycare, she shifted the vehicle into reverse to back out of a parking space, and the vehicle lost power. She was able to restart the vehicle. A short time later, however, the vehicle lost power again while she was driving down the highway.

31.     The next day, Plaintiff was driving to work when her vehicle lost power for a third time. She made an appointment and took the vehicle to Reed Buick GMC. Service personnel at the dealership inspected the vehicle and informed Plaintiff that her engine was burning oil excessively and that this was a well-known problem in this type of engine.

8

32.     In order to address the problem in the short term, the dealership recommended that she bring the vehicle in for oil changes every 2,500 – 3,000 miles, rather than relying on the vehicle's Oil Life Monitor, and that she check the oil level herself on a weekly basis.  Plaintiff followed these recommendations causing additional costs.   In addition, at the dealer's recommendation, Plaintiff purchased and regularly used a $60 additive to clean out deposits from the burnt oil.

33.      Plaintiff routinely spoke with personnel at her dealership's service department about the issues with her vehicle.  They told her GM knew about the problem with the Class Vehicles' engines, and rather than fixing the problem, GM was waiting for these vehicles to die off.

34.     Plaintiff was told by personnel at her dealership that with this problem, she would have difficulty selling or trading-in the vehicle.

35.     Plaintiff inquired about the cost of a permanent solution to the problem.  She was told the only way to fix the problem was to replace the engine, and that the cost of this solution was approximately $9,500.00.

36.     Frustrated by the cost and inconvenience of having to bring her vehicle back for oil changes every 2,500 – 3,000 miles and the need to replace her engine, Plaintiff wrote a letter to GM, to see whether GM would cover repairs to the vehicle under its warranty.

37.     In response to the letter, Plaintiff was instructed to bring the vehicle back to the dealership so the dealership could perform a burdensome oil consumption test, requiring her to bring her vehicle to the dealership every 500 miles.

38.     Plaintiff followed GM's instructions and brought the vehicle back to Reed Buick GMC.  The dealership began an oil consumption test, which required Plaintiff to frequently return

9

to the dealership so the dealership could closely monitor the vehicle's oil consumption. After returning to the dealership just a few times, Plaintiff was informed that her vehicle had already failed the oil consumption test due to piston ring failure.

39.     Despite the fact that Plaintiff's vehicle failed the oil consumption test and suffered from the same defect that plagued all other vehicles equipped with this same engine, GM failed and refused to make Plaintiff whole. The most GM would do is perform the needed repair at the price of $2,200 and pay $300 towards that price; Plaintiff would be responsible for the remaining $1,900.00.

40.     Ultimately, when left with no other option, Plaintiff obtained the engine replacement on or around January 4, 2023, and was required to pay $1,945 towards the cost of repair.

## II.     THE CLASS VEHICLES ARE DEFECTIVE IN DESIGN.

41.     All Class Vehicles are equipped with a 2.4L EcoTec engine, have an oil capacity of 5 quarts, and contain one or more design defects that cause their engines to consume abnormally high amounts of oil.

42.     In order for the engine to run effectively without causing engine damage, such as heat and friction wear, the pistons and cylinder walls must have a thin film of oil between the opposing metal surfaces. The oil reduces friction and heat, prevents surface scarring, and helps the moving components slide freely past each other.

43.     To keep oil in the crankcase, and to prevent oil from traveling around the pistons and into the combustion chamber, pistons are fitted with compression and oil control rings (collectively, "piston rings"), These piston rings must withstand combustion pressures and hold combustion gases in the combustion chambers, keeping the gases out of the crankcase.

44.     In the Class Vehicles, the piston assembly / piston rings that GM installed in the

10

2.4L Engines fail to achieve their intended purpose of keeping oil in the crankcase and out of the combustion chamber. Further, the rings fail to achieve their intended purpose of trapping combustion gases in the combustion chamber and out of the crankcase.

45. Specifically, the Class Vehicles' piston rings do not maintain sufficient tension, relative to the cylinder walls, and fail to keep oil from seeping past, resulting in excessive oil consumption and causing the problems described infra.

46. First, in the Class Vehicles, oil travels around the piston rings and reaches the combustion chamber, where it is burned during the engines' power stroke, thereby reducing the quantity of oil in the vehicle, reducing engine lubricity, and increasing the risk of correspondent engine damage.

47. Second, the defective piston rings allow for oil to constantly foul the spark plugs in the Class Vehicles. Spark plug electrodes, protrude into the combustion chamber and generate the ignition spark. Importantly, the electrodes must be dry and free of debris to fire properly. When oil migrates into the combustion chamber in the Class Vehicles, the oil coats the spark plugs' electrodes and either diminishes or altogether disables their firing performance.

48. Third, the oil that passes around the rings in the Class Vehicles, and that is not burned in the combustion chamber, gathers and hardens, creating carbon buildup. Due to the excessive carbon buildup in the combustion chamber and on top of the pistons, the Class Vehicles suffer from pre-ignition detonation, or "spark knock" as it is commonly called. Pre-ignition detonation disrupts the proper seating of the piston rings in their respective grooves, which causes them to wear out as they grind against the cylinder walls improperly. This results in the rings not sealing properly and thus allows for even more oil consumption. Pre-ignition detonation also vaporizes the cylinder wall oil film, pushing it past the rings and into the crankcase where it is

11

vacuumed into the intake manifold via the Positive Crankcase Ventilation ("PCV") system.

49.     Included in the 2.4L engines, which further contributes to the Oil Consumption Defect, are spray jets that spray oil onto the piston skirt and cylinder wall. This oil spray overloads and fouls the defective piston rings, triggering oil to migrate past the piston rings into other places in the engine.

50.     In addition, the excessive oil spray collects on the piston ring surfaces forming carbon buildup. Carbon buildup on the piston rings interferes with the rings' seating in their grooves, and thus interferes with the rings' ability to seal out oil. Once the rings lose proper groove seating, they become misaligned with the cylinder bores. Immediate and aggressive ring deterioration occurs as the fragile rings scrape against the harder steel cylinder bores at unintended angles.

51.     GM's PCV system, as installed in each of the Class Vehicles, contributes to oil consumption and engine damage by vacuuming oil from the valve train. This system is closed to the atmosphere in that everything that is internal into the intake system of the engine and crankcase remains in the PCV system.

52.     The PCV system's intended purpose is to vent valve train gas pressures and recirculate that gas pressure into the intake manifold. The intake manifold distributes fresh air pulled through the intake filter, and recirculated air vented from the valve train, to the engines' combustion chambers. PCV systems are not intended to vacuum oil from the valve train.

53.     In the Class Vehicles, however, the PCV system vacuums oil from the valve train and feeds it into the intake manifold runners and ultimately into the combustion chambers. By vacuuming oil from the valve train, the PCV system results in increased oil consumption, carbon buildup and the associated pre-ignition detonation, ring wear, ring failure, ring buildup, spark plug

fouling, combustion chamber oil burn, low lubricity levels, internal component wear and component failure.

54.     GM acknowledged that its PCV system contributed to oil consumption in TSB #13-06-01-003H: Excessive Oil Consumption – Perform Oil Consumption Test and/or Install Piston and Piston Ring Kit. Released (Feb 9, 2016). TSBS are only seen by dealerships and not consumers; therefore, Plaintiff and the Class were unware of its existence. In that TSB, GM instructs dealers to "[t]he oil consumption may have clogged/reduced PCV flow. The PCV system should be serviced. Clean any ice/sludge/water/carbon out of the PCV pipes/hoes, the PCV nipple on the cam cover, the PCV orifice between the #2 and #3 intake runners."

55.     In addition to the Oil Life Monitoring System, the Class Vehicles include an oil pressure gauge on the dash and an oil canister image that ostensibly would illuminate when a vehicle is low on oil. However, neither illuminates for low oil level.

56.     The oil pressure gauge in the Class Vehicles fails provide any indication as to when a vehicle is dangerously low on oil, but instead only illuminate when the vehicles have no oil pressure, which is far beyond the point at which a lack of oil and oil pressure will damage or destroy the Class Vehicle's engine.

57.     The Class Vehicles communicate no visible or audible warnings of destructive oil pressure levels before the engines are damaged, internally seize, or fail altogether. Because the Class Vehicles provide no warnings prior to engine seizure or failure, they put the Vehicle's occupants and public safety at risk.

58.     Even if the Class Vehicles did adequately warn drivers of dangerously low oil conditions (which they do not), any such warnings would do nothing to prevent the full scope of the harms caused by the Oil Consumption Defect. Because the Oil Consumption Defect results in

13

oil migrating past the piston rings, it causes carbon buildup on the ring and cylinder surfaces and fouls spark plugs, even if drivers diligently, and constantly, top-off their oil. Once the spark plugs foul, hazardous engine misfire and engine shutdown events are unavoidable.

59.     The OLM system, installed in each of the Class Vehicles, exacerbates the oil loss and engine damage problems caused by the Oil Consumption Defect, because the customers are instructed to use the OLM for guidance about when to attend to their engine oil needs.

60.     GM's placement of the engine oil dipstick at a position in the engine compartment that is difficult to see further encouraged customers to rely on the dash indicators for information on when to check or service their engine oil.

61.     The Oil Consumption Defect in the Class Vehicles results in excessive oil consumption, pre-ignition detonation, premature ring wear, premature ring fouling, premature ring failure, and spark plug fouling. It also results in inadequate engine lubricity, which creates increased friction, heat, metal on metal contact, and resulting premature engine damage. That means that each Class Vehicle has suffered, and will continue to suffer, internally lubricated component premature wear and failure.

62.     The internal engine components that are subject to premature wear and failure include: pistons, cylinder walls, rings, valves, valve guides, valve stem seals, lifters, push rods, camshafts, rockers, bearings, piston rods, wrist pins, crankshafts, and timing chain components.

63.     Due to the Oil Consumption Defect, all of the Class Vehicles have suffered and will continue to suffer excessive oil consumption, creating metal-on-metal friction, heat levels that far exceed GM's original specifications, and resulting premature engine damage and rapid destruction.

64.     Excessive friction and heat expansion will accelerate wear of internal metal components, sending metal shavings into the crankcase. The shavings travel through the oil

14

passages and frequently become lodged in tight spaces, where they cut into component surfaces moving against them and potentially blocking oil passages.

65.     Once the internal components are scarred and/or worn, they cannot be repaired and must be replaced. The friction and heat expansion damage caused by the Oil Consumption Defect is irreversible.

***The Defect Causes Safety Risks.***

66.     Without sufficient oil and lubricity, the engines in the Class Vehicles will overheat and potentially catch fire.

67.     In GM owners' manuals, GM warns: "Oil levels above or below the acceptable operating range shown on the dipstick are harmful to the engine." Excessive oil consumption can cause engine oil levels to fall to a point where oil pressure is reduced. As GM expressly acknowledges, low oil pressure presents an engine fire risk, stating: "Do not keep driving if the oil pressure is low. The engine can become so hot that it catches fire. Someone could be burned."

68.     Because the OPW system on Class Vehicles does not function properly to warn drivers of low oil pressure, the Oil Consumption Defect presents a direct risk of engine fires.

69.     Low oil conditions are also unsafe because, if the engine experiences enough damage, the Class Vehicles' engines will seize and the Class Vehicles will shut down unexpectedly, which could cause an accident or leave drivers and passengers stranded in an unsafe situation.

70.     The Oil Consumption Defect also causes an unreasonable safety risk because excessive oil getting past the piston rings and fouling spark plugs causes engine misfires and engine shutdown that can leave drivers stalled in the highway and stranded and without the use of their vehicle. Further, the ignition failure caused by fouled spark plugs results in sluggish throttle response which places occupants in harm's way as they interact with other traffic. A Class Vehicle

15

suffering from weakened ignition function cannot accelerate as GM intended. A Class Vehicle suffering from total ignition failure will not even run. Both conditions place occupants in any number of hazardous conditions that would not exist but for the Oil Consumption Defect.

### III. GM WAS AWARE OF THE DESIGN DEFECT.

71.     GM was aware, or should have been aware, of the Oil Consumption defect since at least 2010, well before Plaintiff purchased her Class Vehicle in July 2015.

72.     GM learned of the Oil Consumption Defect prior to 2010 through sources not currently available to Class Members, including, but not limited to: (1) pre-release testing data; (2) early consumer complaints about the Oil Consumption Defect to GM and its dealers about the Class Vehicles, as well as other earlier model year versions of such vehicles; (3) testing conducted in response to those complaints; and (4) aggregate data from GM dealers, including dealer repair orders and high repair rates that can cost up to several thousand dollars for each class vehicle.

73.     In fact, in 2009, GM conducted a "Red-X investigation" of the Oil Consumption Defect in some of its larger vehicles and found that the Oil Consumption Defect was caused by "piston/ring assembly."

74.     This investigation resulted in an internal Executive Report in January 2010.

75.     Thus, by early 2010, GM knew or should have known that there was an Oil Consumption Defect in some or all of its vehicles.

76.     After receiving numerous and persistent complaints about the Oil Consumption Defect in the Class Vehicles, in July 2012, GM published an article in GM TechLink regarding excessive oil consumption in the 2.4L EcoTec LAF[2] engine ("July 2012 GM TechLink article."). The article was titled "Excessive Oil Consumption."

---

[2] LAF is the precursor to the LEA Engine, and, for all material purposes, is the same engine design.

16

77.     GM TechLink is a monthly periodical published by GM for its dealership technicians and service personnel that discusses, among other matters, repair procedures concerning GM vehicles.

78.     The GM TechLink and TSBs referenced in this Complaint are not generally made available to the public.

79.     The 2012 GM TechLink article indicates that excessive oil consumption can be verified by either the presence of obvious oil deposits on all four spark plugs, or an oil consumption test.

80.     In the July 2012 GM TechLink article, GM acknowledges the existence of the defect to its dealer technicians and notes, "Excessive oil consumption may be noticed on some 2010 Equinox and Terrain models equipped with the 2.4 L engines." The article states the condition does not present itself until the car has been driven for some time. "Upon inspection, excessive oil in the fresh air side of the PCV system due to excessive crankcase pressure and blow-by may be noted. In addition, all four spark plugs will have obvious/ excessive oil deposits on them."

81.     On information and belief, the July 2012 TechLink article reproduces verbatim information contained in a service bulletin (Technical Service Bulletin, or "TSB") published by GM prior to July 2012.

82.     In or about February 2013, GM sent "Customer Satisfaction" letters to all model year 2010-2013 Equinox and Terrain owners informing them that "GM [has] recently introduced into production a software update for the life monitor system [which] will recommend more frequent oil changes to support engine durability and overall operating costs." ("February 2013 OLM Campaign.") Further, GM informed class vehicle owners that, "[a]t no-charge, your GM

17

dealer will update your vehicle with these same improvements."

83. On information and belief, the GM February 2013 OLM Campaign reduced the maximum oil change interval from over 10,000 miles to no more than 7,500 miles.

84. A motivating purpose for the GM February 2013 OLM Campaign was to conceal the Oil Consumption Defect and to reduce the costly warranty engine replacements, piston assembly replacements, and other repairs related thereto. By reprogramming OLM systems, GM effectively transferred its warranty repair costs to its customers in the form of more frequent oil service fees and costs for engine oil and oil filters.

85. Upon information and belief GM instituted the February 2013 OLM Campaign in an attempt to delay the onset of the costly engine repairs that Class Members are certain to experience as a result of the defect alleged herein. By reprogramming the OLM to recommend more frequent oil changes, upon information and belief, GM hoped that fewer owners would drive thousands of miles with extremely low engine oil levels. Thus, this reprogramming of the OLM, did not eliminate the Oil Consumption Defect. Nor did this reprogramming prevent premature powertrain component wear and other engine damage due to the defect. This reprogramming was an attempt to mask the manifestations of the Oil Consumption Defect and place the financial burden on Plaintiffs and Class Members.

86. In or about August 2013, GM published another article in TechLink (August 2013 TechLink article"), entitled "2.4L EcoTec Engine Oil Consumption." In this article, GM again acknowledges the existence of excessive oil consumption in certain Class Vehicles, claiming that "Excessive oil consumption on some 2010-2013 LaCrosse, Equinox, Terrain and 2011-2013 Regal models equipped with the 2.4L engines does not require engine replacement. If excessive oil consumption is confirmed after an oil consumption test, new piston and rings should be installed."

18

87. The August 2013 TechLink article identified a defect in the 2.4L EcoTec engine's piston rings, stating in part:

> **Piston Ring Coating.** The top compression ring in the new kit has a more robust coating on it that is designed not to wear as quickly as the original coating. Tests indicate that it wears about 4-5 times longer than the original coating.
>
> If the top compression ring is worn, it will allow combustion pressure past it, which causes the oil control rings to be less effective and results in excessive oil consumption.

88. In or around September 2013, GM also acknowledged the existence of the oil consumption engine defect in a Technical Service Bulletin ("TSB") that it only makes available to its dealers, not consumers.

89. Although the September 2013 TSB recommended certain engine repairs (e.g., replacement of the pistons and rings as described above) "under warranty," Defendant arbitrarily and unfairly instructed its dealers not to perform the engine repairs identified in the TSB under warranty unless the consumer's vehicle undergoes a burdensome oil consumption test that has to show the consumer's vehicle is consuming more than 1 quart of oil per 2,000 miles of driving. To this day, Defendant continues to impose the arbitrary, unfair, and onerous oil consumption test as a precondition to honoring its warranty obligations.

90. In May 2014, GM published an updated TSB relating to the Oil Consumption Defect.

91. GM issued a technical service bulleting (TSB) number 13-06-01-003 relating to the Oil Consumption Defect for MY 2010-2013 Class Vehicles. In this TSB, GM acknowledges that it has received customer "comments" on excessive oil consumption, "and/or that they have to add oil between oil changes." This TSB was not distributed to consumers. In the TSB, GM directs dealer technicians to conduct an "oil consumption test," but first to verify that the vehicles

19

computer (Electronic Control Module) has been re-programmed "to adjust the engine oil life monitor to a maximum of 7,500 miles."

92.     In August 2014, GM offered to repair MY 2010 Equinox and Terrain vehicles experiencing excessive oil consumption, as defined by GM. This repair, known as a "Special Coverage Adjustment" (SCA), included, among other things, installation of new pistons and new piston rings with improved combustion gas control and wear characteristics due to an upgraded coating on the compression rings, increasing the ring radial thickness and increasing the ring height, and by decreasing the ring end gaps.

93.     In January 2015, GM issued a TSB for 2010 Equinoxes and Terrains that recognized "Excessive Oil Consumption" stating: "Some 2010 model year Chevrolet Equinox and GMC Terrain vehicles, equipped with a 2.4L engine, may exhibit excessive engine oil consumption (less than 2,000 miles per quart of engine oil), due to piston ring wear."

94.      In July 2015, GM offered a repair to the MY 2011 Equinox and Terrain vehicles that was similar in material respects to the MY 2010 SCA.

95.     In 2017, GM offered a repair to MY 2012 Equinox and Terrain vehicles that was similar in material respects to the MY 2010 and MY 2011 SCA.

96.     In January 2020, GM issued a Special Coverage Adjustment for MY 2013 Class Vehicles, yet refused to do so for MY 2014-2017 Class Vehicles, which engines are in all material ways identical to MY 2013.

97.     In or around late 2019 / early 2020, GM settled a lawsuit for the same Oil Consumption Defect, but only included MY 2010-2012 in the settlement.

98.     All Class Vehicles suffer the same Oil Consumption Defect as the MY 2010-2012 vehicles.

99. Although GM was aware excessive oil consumption was a significant problem in vehicles equipped with EcoTec 2.4L engines—and had offered to make repairs to vehicles from certain model years to attempt to address this problem—it did not cease selling new vehicles equipped with EcoTec 2.4L engines or inform consumers purchasing these new vehicles that they were defective. Plaintiff purchased her Chevrolet Equinox in 2015, well after problems began occurring and were reported to GM.

100. GM knew or should have known by no later than late 2010—well before Plaintiff purchased her Chevrolet Equinox—that the Class Vehicles contained the Oil Consumption Defect from the time they left the factory.

101. GM had, and continues to have, exclusive knowledge and/or access to material facts about the Class Vehicles and engines that is not reasonably discoverable by Plaintiff and Class Members. It has actively and fraudulently concealed the defect from its customers despite its knowledge, and communicated half-truths to customers, directly through owner letters to owners of previous model years and indirectly through its dealer network, regarding the nature of the Oil Consumption Defect.

102. Although Defendant began offering to repair certain non-class vehicles equipped with EcoTec 2.4L engines to address the problem of excessive oil consumption, Defendant continued selling vehicles equipped with this defective engine without informing Plaintiff and Class Members about the defect.

103. To make matters worse, Defendant failed to provide the same remedy to purchasers of Model Year 2014-2017 Class Vehicles even though the engines are the same in all material respects and despite the fact that the Oil Consumption Defect was not remedied in these models.

104. Indeed, for MY 2015 Class Vehicles, more than one-fifth of all complaints to

NHTSA related to the Oil Consumption Defect and the problem is widespread.

**A. Customers Repeatedly Complained about Excessive Oil Consumption and Engine Damage in the Class Vehicles and Earlier Models.**

105. Complaints filed by consumers with the National Highway Traffic Safety Administration (NHTSA) and posted on various internet sites (e.g, terrainforum.com; carcomplaints.com, etc.) demonstrate that the Oil Consumption Defect is widespread.

106. Further, because GM, like other automobile manufacturers, monitors NHTSA and other complaints as part of its quality control measures, these complaints affirmatively demonstrate GM knew about the Oil Consumption Defect before Plaintiff and Class Members purchased their vehicles and before the warranty period arguably ran on these vehicles:

- www.carcomplaints.com on September 15, 2009 for a 2010 Chevrolet Equinox: "Amazingly, after several trips to Len Stoler for an oil consumption test. they said that it never used more then a quart of oil per thousand. I decided to check their honesty. I drained and oil and made sure it was 1.5 quarts low. Amazingly according to Len Stoler, it didn't use more then a quart. That's when I stopped taking it for the oil consumption test."

- www.carcomplaints.com on November 27, 2009 for a 2010 Chevrolet Equinox: "I have 80,000 miles on my car at this point. However, this oil consumption has been happening since I have owned the car. I have asked why my car runs so rough no one seems to know. Luckily I get my oil changed every 3000 miles, however no one until recently noticed I have no oil in my engine at that time. Although they are fixing it this is not the only thing I have had wrong."

- www.carcomplaints.com on September 1, 2010 for a 2010 Chevrolet Equinox: "What kind of engine burns a litre (quart) every 1000km (620miles)? A 2.4L 4cyl piece of garbage from GM, that's what kind! Maybe the engine just needs to be broken in. Nope, that's not it. Maybe it needs synthetic. Nope, not that either. The geniuses at my dealership were pretty stumped when I approached them back in 2010 with this problem. They told me I had to do something called an "oil report" to confirm that it was burning oil. Cause that's something that people lie about? Regardless, This process involves me driving out of my way to the dealership everytime I get low on oil - which is about every 2nd tank of gas. What if I'm out of town? "Well...try to get topped up before you go". Right, because I have time for that. Huge inconvenience? Absolutely. Apparently this oil report

22

was a huge inconvenience for them as well. Every time I showed up at the dealership to get oil added, they treated me like a second class citizen. So I gave up on the oil report and resigned myself to adding a litre at every 2nd fill up. Now, 4 years later I read online that some people are getting their engines replaced as a result of excessive oil consumption! Thanks CARCOMPLAINTS.COM! I'll be working on my dealership to replace my engine. Then I will be trading in my Equinox for an import."

- NHTSA Complaint on March 20, 2015 for a 2013 Chevrolet Equinox: "TL* THE CONTACT OWNS A 2013 CHEVROLET EQUINOX. WHILE DRIVING AT AN UNKNOWN SPEED, A LOUD ABNORMAL TICKING SOUND EMITTED FROM THE VEHICLE WITHOUT WARNING. THE VEHICLE WAS TAKEN TO A DEALER WHERE IT WAS DIAGNOSED THAT THERE WAS NO OIL IN THE VEHICLE. THE TECHNICIAN PERFORMED AN OIL CHANGE AND COMPRESSION TEST EVERY 1,000 MILES. THE CONTACT WAS INFORMED THAT THE PISTON IN THE ENGINE FAILED AND NEEDED TO BE REPLACED. THE VEHICLE WAS REPAIRED, BUT THE FAILURE RECURRED. THE VEHICLE WAS TAKEN TO AN INDEPENDENT MECHANIC WHERE THE TECHNICIAN STATED THAT THE VEHICLE WAS BURNING OIL RAPIDLY. THE VEHICLE WAS NOT REPAIRED. ON ANOTHER OCCASION, THE VEHICLE FAILED TO SHIFT GEARS PROPERLY. THE VEHICLE WAS TAKEN TO THE DEALER WHERE IT WAS DIAGNOSED THAT THE TRANSMISSION NEEDED TO BE REPLACED. THE TRANSMISSION WAS REPAIRED WITH UNKNOWN PARTS. THE CONTACT ALSO STATED THAT THE WINDSHIELD WIPERS FAILED TO OPERATE INTERMITTENTLY. THE VEHICLE WAS NOT DIAGNOSED OR REPAIRED. THE MANUFACTURER WAS NOT NOTIFIED OF THE FAILURE. THE FAILURE MILEAGE WAS 33,000."

- NHTSA Complaint on May 15, 2015 for 2013 Chevrolet Equinox: "THE ENGINE BURNS ABOUT A QUART OF OIL PER 1000 MILES. WE HAD A DEALER LOOK INTO IT, INCLUDING A DIP TEST EVERY 500 MILES. THEY FOUND THAT IT IS INDEED BURNING OIL, AND SAID DUE TO LOW TENSION RINGS AND SHORT SKIRT PISTON, THIS WAS NORMAL. I'M NO MECHANIC, BUT 3 QUARTS OF OIL PER NORMAL OIL CHANGE INTERVALS SEEMS REALLY EXCESSIVE. IT'S BEEN LIKE THIS PRETTY MUCH SINCE WE BOUGHT IT NEW. I GUESS IT COULD BE SAFETY RELATED BECAUSE SEVERE OIL CONSUMPTION COULD CAUSE A FIRE."

- www.carcomplaints.com on May 27, 2015 for a 2012 Chevrolet Equinox: "I had 2 oil consumption tests done in 2015 before 100,000 miles and was told both times that my car "met the specs". I have to travel around with quarts of oil in my car because I constantly have to check the oil and fill it

23

up. I recently received a letter from Chevrolet stating that they now acknowledge an oil consumption problem with this model year Equinox. My problem is I now have 138,000 miles and the fix is for vehicles with less than 120,000 miles. Neither my car dealership (Anoka MN) or Chevrolet are willing to fix the problem because I now have over 120,000 miles, even though I was having the problem below 100,000 miles. I am definitely angry about this and am going to go to the top to address this issue. I'd like to know why 120,000 miles is the "magical number" for mileage. I am looking for a new vehicle and will not buy an Equinox and will not by a Chevrolet. I feel I have not been dealt with fairly."

- www.carcomplaints.com on June 1, 2015 for a 2012 Equinox-"We purchased a used 2012 Chevrolet Equinox used in early 2015 with a little over 27,000 miles showing on the odometer and were well pleased with vehicle at the time. About a thousand miles later, I was checking the oil and noticed it was low...had to add about 1/2 quart or so to top it off. I thought this was unusual since it just had a fresh change when we bought it. When I changed the oil about three thousand miles later, it was almost a quart low then. The engine now has a little over 45,000 miles on it and I'm having to add about 1-2 quarts in between oil changes, which is ridiculous for a modern engine. Searching through the internet tonight, I'm seeing this is a common issue for these engines that is being blamed on a faulty engineering piston / ring / timing chain design. Has anyone else had any luck getting GM to stand behind their product and correct the problem or am I just stuck with keeping a case of oil around all the time? I'm going to make it my life's calling to tell everyone about this and warn them off this vehicle. We've always bought Ford products in the past and I was hesitant about buying a Government Motors product, wished now that had trusted my gut on this purchase."

- www.carcomplaints.com on June 25, 2015 for a 2012 Chevrolet Equinox-"I was a victim of the excessive oil consumption problems that, I now understand are common with the Chevy Equinox. I did not know that the oil was low, which I had the road and called AAA. changed approx 4000 miles before. I first became aware of the problem when my engine would stop each time I stopped at an intersection. I was on the way to my repair garage when I heard a rather loud noise coming from the engine compartment. Pull over to the side of Car was towed to my normal service garage. My mechanic could not help so I had the car towed to Lawrence Chevrolet in Mechanicsburg, Pa. A diagnostic check was made and the dealership said that I needed a new engine and that my warranty would not cover the cost of the repairs. Estimated costs to me would be about $6000. I did not authorized the dealership to fix the vehicle due to the cost. Now looking for another way to get the problem fixed."

- www.carcomplaints.com on July 10, 2015 for a 2012 Chevrolet Equinox: I

had the exact same issues as everyone else. The 2012 Equinox started to sound like an old Model T and would die at red lights. I took to our mechanic and he said there was no oil in the car! He called the Chevy rep for us which came to look and told him we needed a new engine because we let it run with no oil. Our mechanic said well I change their oil every 5,000 miles so I know that's not true. The rep said they need to be changing every 1,000 miles! We could not believe it so I called Detroit. GM said this was normal and my husband should be putting oil in it all the time. We went with a brand new engine because were told if we put an old one in the same thing would happen again. Once its paid off it will be gone! We will never buy another Chevrolet again! Now my daughter drives it, we taught her how to check the oil and add if needed! OMG REALLY????

- www.carcomplaints.com on December 2, 2015 for a 2012 Chevrolet Equinox: "The problem started around late 2015 had almost 100,000 miles on the car started using more oil than usual. Didn't think there was a problem but it got worse as time went on started adding two quarts of oil between oil changes. Now I'm up to 3 quarts of oil between oil changes I didn't realize there was a problem until I got a letter from GM saying that they would repair the problem. But now I have a 148000 on the car and it's out of warranty, so now what do I do."

- www.carcomplaints.com on August 20, 2016 for a 2012 Chevrolet Equinox -"I bought this car about 2 years ago and for some reason every time I check the oil, the oil is low, even after an oil change. This is ridiculous. I just don't understand how a car consumes oil. I took it to the dealership and they don't understand why it does that. I took to the mechanic to check for leaks, nothing. So where the hell is the oil going if its not leaking? I wish I knew this before I bought this car because I see big problems with this in the future because my wife drives this car and she doesn't know anything about cars. She takes my kids to daycare every morning. I keep up with all maintenance that needs to be done, but I have a feeling my heads are going blow or something bad is going to happen if this problem is not resolved."

- NHTSA Complaint on October 8, 2016 for a 2012 Chevrolet Equinox- "TL* THE CONTACT OWNS A 2012 CHEVROLET EQUINOX. THE CONTACT STATED THAT THE CHECK OIL ENGINE WARNING INDICATOR ILLUMINATED. THE CONTACTED ASSUMED THAT THE OIL NEEDED TO BE CHANGED. THE VEHICLE WAS TAKEN TO THE DEALER WHERE IT WAS DIAGNOSED AS EXCESSIVE OIL CONSUMPTION. THE VEHICLE WAS NOT REPAIRED. THE MANUFACTURER WAS MADE AWARE OF THE ISSUE. THE FAILURE MILEAGE WAS 94,000."

- NHTSA Complaint on February 3, 2017 for 2012 Chevrolet Equinox: "I PURCHASED THIS PRE-OWNED EQUINOX SEPTEMBER 30. IN

DECEMBER I FOUND OUT FROM MY MECHANIC THAT THERE IS AN OIL CONSUMPTION PROBLEM. IT'S NOT LEAKING OIL, IT'S USING OIL. HE PRINTED OUT DOCUMENTATION THAT SHOWS 2012 EQUINOX VEHICLES HAVE THIS OIL CONSUMPTION PROBLEM DUE TO FAULTY PISTON AND PISTON RING INSTALLATION. I BROUGHT IT TO MY LOCAL GMC/CHEVY DEALER AND HE SAID THERE IS NOTHING THAT GMC WILL DO FOR ME AND THAT IT WOULD BE $3,000 TO FIX. I ASKED FOR AN OIL CONSUMPTION TEST BUT HE DIDN'T FOLLOW THROUGH TO SCHEDULE IT. THE VEHICLE HAD A POWER TRAIN WARRANTY THAT EXPIRED THIS LAST OCTOBER. BECAUSE OF THAT IT WON'T BE REPAIRED AT NO COST TO ME. BECAUSE THIS IS A KNOWN ISSUE THAT THIS VEHICLE ENGINE WAS PUT TOGETHER INCORRECTLY, THERE IS NO WAY THAT I SHOULD PAY FOR THE REPAIR. OVER TIME THIS WILL CAUSE IRREPARABLE DAMAGE TO THE ENGINE, LEAVING ME WITH MULTIPLE EXPENSIVE UPKEEP AND THE INABILITY TO SELL. IT JUST TURNED TO 82,000 MILES. MY FIRST AMERICAN BOUGHT CAR AFTER OWNING FOREIGN CARS FOR DECADES. WANTED TO BE PATRIOTIC. I WON'T HAVE THAT MISJUDGMENT AGAIN. I FELT STUCK AT FIRST BUT THEN REALIZED THAT THIS IS NOT AN ACCEPTABLE CONCLUSION. GMC NEEDS TO STAND BEHIND WHAT THEY HAVE BUILT."

- NHTSA Complaint on February 11, 2017 for 2010 Chevrolet Equinox-"THE VEHICLE WAS IN MOTION, ACCELERATING ON A FREEWAY ENTRANCE RAMP. AS I WAS MERGING, THE ENGINE LOST POWER AND STARTED A LOUD KNOCKING NOISE. I COULD NOT ACCELERATE, STARTED SLOWING, BUT WAS ABLE TO GET TO THE SHOULDER. I HAD THE VEHICLE TOWED TO THE NEAREST CHEVY DEALER, WHERE A QUICK DIAGNOSIS WAS THAT THE ENGINE HAD FAILED, AND WOULD HAVE TO BE REPLACED. THIS ENGINE HAS HAD 2 WARRANTY REPAIRS RELATED TO OIL ISSUES (8/2011 AND 8/2014). IN BOTH CASES THE TIMING CHAINS, TENSIONER, GASKETS AND SEALS, ETC. WERE REPLACED. ALSO, IN 2014 THERE WAS A RECALL TO REPROGRAM THE OIL LIFE MONITOR. THERE WAS A RECALL LETTER IN SEPTEMBER, 2014 REGARDING EXCESSIVE ENGINE OIL USE DUE TO PISTON RING WEAR CAUSED BY THE PREVIOUS ISSUES. THIS CONDITION WAS TO HAVE AN EXTENDED WARRANTY OF 10 YEARS OR 120,000 MILES. I BLAME THE ENGINE FAILURE AS AN EXTENSION OF THESE OIL RELATED ISSUES, WHILE CHEVY SAYS 'NO'."

- www.carcomplaints.com on February 28, 2017 for a 2012 Equinox-"I purchased my 2012 Equinox new, late in 2011. It now has just over 80,000

26

miles. I have done all routine maintenance on the vehicle but a couple days ago the check engine light came on... so I brought it in for service at my dealer. I was told that my vehicle had NO oil... nothing was registering on the dip stick at all! I was told that this is a prevalent problem with this make and model... that I needed to check my oil every 1000 miles now and that I may need to get my pistons etc.. replaced. Estimate...$2500.00 ! That was yesterday... and today the same check engine light is on. OnStar diagnosis today... same problem. In reading the same problem over and over again on this site, something needs to be done and there needs to be a recall!"

- NHTSA Complaint on March 2, 2017 for a 2012 Chevrolet Equinox: "CHECK ENGINE LIGHT CAME ON. CAR HAD BEEN IDLING ROUGH AND WOULD ALMOST STALL OUT AT RED LIGHTS. ALSO MADE A TICKING NOISE WHEN PRESSING ON THE ACCELERATOR AT ABOUT 20-25 MPH. I TOOK IT TO THE MECHANIC AND HE FOUND THE OIL LEVEL LOW. PERFORMED AN OIL CHANGE AND CLEARED THE DIAGNOSTIC CODE. HE ALSO GAVE ME INFORMATION PERTAINING TO THIS EXCESSIVE OIL CONSUMPTION BULLETIN. NOW I WILL HAVE TO CHECK MY OIL LEVEL AND MAKE SURE TO GET AN OIL CHANGE EVERY 3000 MILES."

- NHTSA Complaint on April 03, 2017 for a 2013 Chevrolet Equinox- "USING WAY TO MUCH OIL. VERY DISAPPOINTED. I BUY A CAR TO KEEP LONG TERM. PRETTY OBVIOUS THIS PROBLEM WAS WELL KNOWN BY AUTOMAKER. I WAS NEVER NOTIFIED. WILL NEVER BUY A GM AGAIN!!!!"

- NHTSA Complaint: [2012 Chevy Equinox]-"ON APRIL, 13 2017, MY WIFE WAS EXITING THE HIGHWAY ON THE WAY HOME FROM WORK. THE VEHICLE IMMEDIATELY SLOWED AND SHUT DOWN NEARLY CAUSING HER TO BE RUN OVER BY A SEMI-TRACTOR BEHIND HER. BECAUSE THE CAR COULD NOT BE RE-STARTED, I HAD IT TOWED TO MY USUAL MECHANIC. HIS DIAGNOSIS SHOWED IT HAD A TIMING CHAIN FAILURE WHICH TORE UP THE UPPER END OF THE MOTOR. IN HIS EXPERIENCE SUCH DAMAGE WAS THE RESULT OF OIL ISSUES. THIS CAME AS A GREAT SHOCK TO MEASURE I REGULARLY CHANGE THE OIL EVERY 3000 MILES. I WENT HOME THAT NIGHT AND BEGAN TO RESEARCH THIS PROBLEM AND HAVE FOUND THAT THIS IS NOT A RARE OCCURRENCE WITH THIS MOTOR. I WOULD HAVE TO ADD FROM 1-3 QUARTS OF OIL BETWEEN CHANGES BUT BECAUSE THERE WERE NO BULLETINS OR RECALLS I WAS TOLD I WOULD JUST HAVE TO DEAL WITH IT. SO I GUESS I NEED TO KNOW HOW MANY OF THESE VEHICLES HAVE TO DIE IN TRAFFIC OR PEOPLE HAVE TO DIE OR BE INJURED BEFORE

SOMEONE TAKES NOTICE. I WILL HAVE TO REPLACE MY MOTOR (OVER $5000) AND GM KNOWS THESE PROBLEMS EXIST. IT WAS JUST A MATTER OF TIME. AND TO ADD INSULT TO INJURY, GM EXPECTS ME TO HAVE THE VEHICLE TOWED TO THEIR FACILITY AT MY EXPENSE SO THEY CAN CONFIRM THE DIAGNOSIS. IF THE DIAGNOSIS IS CONFIRMED, THEN I'LL HAVE TO TOW IT BACK TO MY GUY SO HE CAN FIX IT. ANOTHER $200 BUCKS. ONCE AGAIN, DOESN'T ANYONE MONITOR THE INTERNET ABOUT THIS STUFF? PEOPLE GET SO FRUSTRATED WHEN DEALING WITH LARGE CORPORATIONS, THEY HAVE NO CHOICE BUT TO SHARE THEIR STORIES WITH INDEPENDENT SOURCES. AND GM SURELY WON'T INCUR ADDITIONAL EXPENSES WITHOUT GOVERNMENT SCRUTINY. WE'VE LEARNED THAT THE HARD WAY. I JUST WANT THEM TO DO THE RIGHT THING. ADMIT IT WAS A PROBLEM-PLAGUED MOTOR AND FIX IT. THANK YOU FOR YOUR TIME.

- NHTSA Complaint on April 13, 2017 for a 2012 Chevrolet Equinox- "GOES THROUGH 4 QUARTS OF OIL BETWEEN OIL CHAGES WHICH ARE DONE EVERY 3 THOUSAND MILES. OIL LIGHT DOES NOT COME ON WHEN YOU ARE 3 QUARTS LOW.

- NHTSA Complaint on May, 26 2017 for 2012 Chevrolet Equinox- "THIS VEHICLE HAS KNOWN OIL CONSUMPTION ISSUES. IN APRIL 2016 THE VEHICLE WAS LURCHING AND SHAKING. DURING SERVICE OF THE VEHICLE THEY STATED THE OIL WAS LOW, WHICH HAS BEEN ON ONGOING ISSUE. WE WERE ADVISED TO BRING IT BACK IN AUGUST FOR AN OIL CONSUMPTION TEST. WE TOOK IT IN FOR THE OIL CONSUMPTION TEST. NOW IN MAY 2017 WE ARE EXPERIENCING THE SAME ISSUES. INTERESTINGLY ENOUGH THE DEALERSHIP NOW HAS NO RECORD OF THE OIL ISSUES, INCLUDING THE OIL CONSUMPTION TEST. THE DEALERSHIP RUMMAGED THROUGH THE GLOVE COMPARTMENT AND STATED THE VEHICLE WAS ONLY GETTING OIL CHANGES EVERY 6000. IN FACT, NOT ALL TO THE OIL CHANGE RECEIPTS GO IN THE GLOVE COMPARTMENT. WE BELIEVE GM IS ATTEMPTING TO HIDE THE ISSUE. ULTIMATELY THE VEHICLE WILL LURCH AND CAUSE PERSONAL INJURY OR PROPERTY DAMAGE."

- NHTSA Complaint on June 26, 2017 for 2012 Equinox-"WE BUY THIS CAR FROM CHEVROLET COMPANY ON NOVEMBER 14,2011. SINCE THAT TIME THE CAR WAS NOT IN OFTEN USE. UP TO ONE YEAR IT IS WAS IN THE STORAGE WHEN WE BEGAN TO USE IT REGULAR WE NOTE THAT THE ENGINE HAS SOME FACTORY DEFECT, THE ENGINE OIL IS OFTEN DID NON RECEIVE TO EVEN

28

5000 MILES, AT THE 2500 MILES ESTIMETELY, WE WERE FORCE TO ALWAYS CHANGE OIL, THE OIL COLOR OF THE ENGINE WAS ALWAYS VERY BLACK AS DIRTY, WE ALWAYS WERE WONDERING, WHY THE COLOR OF THE ENGINE OIL IS TURNS VERY BLACK, LIKE WE DID NOT CHANGED IT FOR LONG TIME.

- NHTSA Complaint on July 8, 2017 for 2010 Chevrolet Equinox: "PURCHASED VEHICLE USED IN 2013 WITH 28K MILES. STARTED NOTICING AN ENGINE KNOCK IN 2016, IN BETWEEN OIL CHANGES, @ APPRX. 85K MILES. BEGAN HAVING TO ADD 3-4 QUARTS OF OIL EVERY 1000 MILES, GIVE OR TAKE. CALLED DEALERSHIP FOR SERVICE - WHILE WARRANTY WAS STILL IN EFFECT - AND WAS TOLD IT WAS A COMMON PROBLEM WITH THIS ENGINE, AND ADDING OIL WAS ALL THAT NEEDED TO BE DONE. WHILE DEALING WITH THAT, HAD TO REPLACE THE SENSOR, AS VEHICLE STALLED WHILE IN A LEFT TURN LANE, WHICH ALMOST CAUSED ME TO BE REAR ENDED. DECEMBER 2016 - OIL CONTINUED TO BE BURNED AT AN ALARMING RATE, SO MY HUSBAND CONTACTED A FRIEND WHO WORKS FOR A CHEVY DEALER. WE WERE TOLD NOT ONLY IS THE MASSIVE OIL CONSUMPTION NOT NORMAL, BUT THAT GM IS FULLY AWARE OF THE PROBLEM, BUT REFUSING TO ISSUE A RECALL OR PAY TO HAVE THE PISTONS REPLACED! 2017 - HAVE CONTINUED TO ADD 2-4 QUARTS OF OIL EVERY 1000 MILES OR SO; THEN MAY 2017, RECEIVED NOTICE FROM GM ACKNOWLEDGING THE PISTON RING WEAR/EXCESSIVE OIL CONSUMPTION, BUT THAT IT'S ONLY REPAIRABLE WITHIN 7 YEARS 6 MONTHS OF ORIGINAL IN-SERVICE DATE, OR 120,000 MILES, WHICHEVER COMES FIRST! SERIOUSLY?! I AM PAST BOTH & AM PISSED OFF! GM HAS KNOWN ABOUT THIS PROBLEM FOR YEARS, AND NEEDS TO TAKE FULL RESPONSIBILITY, NOT IMPOSE A YEAR/MILEAGE CAP! I WONDER IF A CLASS- ACTION LAWSUIT WOULD WAKE THEM UP? I'M NOT OPPOSED TO LOOKING INTO IT! DON'T GET ME WRONG - PREVIOUS TO MY EQUINOX, I OWNED AN HHR FOR 11 YEARS, AND PRIOR TO THAT, A SUBURBAN FOR 5 YEARS. I LIKE MY CHEVY'S BUT THIS ISSUE HAS LEFT A BAD TASTE FOR THEM, AND AM TOTALLY UNIMPRESSED WITH THEIR LACK OF CONCERN REGARDING THIS ISSUE. FOR THOSE OF US THAT ARE PAST THE VERY CONVENIENT YEARS/MILES, THIS IS A VERY EXPENSIVE OUT OF POCKET REPAIR. I CAN'T EVEN TRADE IT IN, AS I STILL OWE ON THE DAMN LOAN!! STEP UP GM, & DO THE RIGHT THING! BY THE WAY - HUBBY IS REPLACING THE TIMING CHAIN TODAY :O["

- NHTSA Complaint on July 8, 2017 for 2010 Equinox: "WAS TOLD BY

MY MECHANIC THE VEHICLE WAS BURNING OIL. FOUND OUT IN MAY 2017 THAT CHEVY IS AWARE OF A DEFECTIVE PISTON RING PROBLEM THAT CAUSES THIS. THEY HAVE BEEN AWARE SINCE AT LEAST 2015. WAITED 2 YEARS TO NOTIFY ME BY MAIL. WHEN I WENT TO A DEALER TO HAVE PROBLEM FIXED I WAS TOLD VEHICLE HAS TOO MANY MILES ON IT. IT WOULD NOT HAVE HAD TOO MANY MILES HAD I BENN NOTIFIED 2 YEARS AGO!"

- NHTSA Complaint on October 10, 2017 for 2010 Chevrolet Equinox: "GM IS AWARE OF AN OIL CONSUMPTION ISSUE ON 2010MY+ CHEVY EQUINOX AND GMC TERRAIN WITH THE 2.4L ECOTEC ENGINE. THEY HAVE SO FAR ISSUED SERVICE BULLETINS FOR 2010-2012MY TO REPLACE THE PISTON RINGS AND TIMING CHAIN BECAUSE IN THIS SITUATION, THE TIMING CHAIN CAN STRETCH CAUSING IT TO SKIP SEVERAL TEETH AND CAUSE ENGINE DAMAGE. I COMPLAINED ABOUT EXCESSIVE OIL CONSUMPTION (1 QUART EVERY ~1000 MILES) TO THE DEALER. THE DEALER IS INSTRUCTED TO DO AN OIL CONSUMPTION TEST BY GM. 200 MILES AFTER WE BEGAN THIS OIL CONSUMPTION TEST, I STARTED THE CAR ONE MORNING AND THERE WERE LOUD SOUNDS COMING FROM THE ENGINE COMPARTMENT. I CALLED FOR A TOW TO THE DEALER AND THEY SAID THE ENGINE WAS SEVERELY DAMAGED AND A NEW ENGINE IS RECOMMENDED. GM DOESN'T WANT TO TAKE OWNERSHIP FOR THIS KNOWN ISSUE. BULLETIN SB-10058791-5041"

- NHTSA Complaint on October 10, 2017 for 2013 Chevrolet Equinox: "THE ENGINE OF MY CHEVROLET EQUINOX HAS BEEN BURNING OFF WAY TOO MUCH OIL. I HAVE SEEN ONLINE THAT THIS IS AN ISSUE WITH MANY EQUINOXS. AFTER TAKING IT INTO THE DEALERSHIP, I WAS TOLD THAT THE PISTON RINGS ARE NOT SEALING, AND THUS LETTING MORE OIL THROUGH TO BE BURNED. THE ESTIMATED COST FOR REPAIR IS 3300 DOLLARS. CONSIDERING IT IS AN ENGINE FAILURE, GM SHOULD BE ON THE LINE FOR THAT COST. IT IS ALSO DANGEROUS, AS NO CHECK ENGINE LIGHT CAME ON WHEN MY OIL WAS DRAMATICALLY LOW LONG BEFORE I WAS DUE FOR AN OIL CHANGE. OVERALL A DANGEROUS FACTOR."

- NHTSA Complaint on October 15, 2017 for 2012 Chevrolet Equinox: "TL* THE CONTACT OWNS A 2012 CHEVROLET EQUINOX. WHILE DRIVING VARIOUS SPEEDS, A KNOCKING NOISE WAS HEARD COMING FROM THE ENGINE WITHOUT WARNING. THE VEHICLE WAS TAKEN TO AN INDEPENDENT MECHANIC WHO

30

DIAGNOSED THAT THERE WAS A FAILURE WITH THE PISTON RING, WHICH CAUSED EXCESSIVE OIL CONSUMPTION. THE VEHICLE WAS NOT REPAIRED. THE CONTACT RECEIVED AN EXTENDED WARRANTY NOTIFICATION FOR THE ENGINE. THE MANUFACTURER STATED THAT THE VEHICLE WAS NOT COVERED UNDER THE EXTENDED WARRANTY DUE TO EXCESSIVE MILEAGE. THE FAILURE MILEAGE WAS APPROXIMATELY 115,000."

- NHTSA Complaint on October 25, 2018 for 2015 Chevrolet Equinox: "WITH OUT WARNING MY WIFES CAR WENT INTO ENGINE POWER FAILURE MODE. THE CAR WOULD NOT GO MORE THEN 10 MPH. I HAD THE CAR TOWED TO A CHEVY DEALERSHIP. THEY INFORMED ME THAT THE VEHICLE WAS FOUR QUARTS LOW OF ITS MOTOR OIL. THEY THEN ASKED ME FOR ALL THE SERVICE RECORDS I HAD TO ESTABLISH A HISTORY. THEY HAD THE OIL CHANGES THAT I DID FROM THE DEALER, ONE FROM A WELL KNOW AUTO MERCHANDISER AND BECAUSE I DID THE MOST RECENT ONE MYSELF, THE DEALER IS TELLING ME THAT THEY WILL NOT ACCEPT THAT ONE BECAUSE THERE IS NO DOCUMENTATION OF ME DOING IT AND HENCE THE VEHICLES POWER TRAIN WARRANTY WILL NOT BE HONORED. THE CAR IS ONLY THREE YEARS OLD AND HAS 75000 MILES ON IT. NO INDICATION OF ANY ISSUES WERE PRESENT AT ANYTIME WITH THIS VEHICLE."

- NHTSA Complaint on March 7, 2019 for 2015 Chevrolet Equinox: "MY CAR IS A 2015 CHEVY EQUINOX THAT I HAVE DRIVEN SINCE I PICKED IT UP FROM THE DEALER WITH SIX MILES ON IT. ON OR ABOUT FEBRUARY 8. I STARTED THE CAR IN THE MORNING, AFTER RUNNING FOR A FEW SECONDS IT SOUNDED LIKE THE OIL WAS TOO LOW. I SHUT THE CAR OFF CHECKED THE OIL, FOUND IT LOW, I PUT TWO QUARTS IN AND STARTED IT AGAIN. I CHECKED IT AGAIN SAW IT WAS LOW, I LOOKED UNDERNEATH AND SAW OIL ON THE GROUND. I TOWED THE CAR TO MY REGULAR MECHANIC, HE SAID IT WAS A REAR MAIN SEAL. DURING THE REPAIR HE TOLD ME HE WAS RESEARCHING THE CAR AND LEARNED THAT THIS IS A COMMON PROBLEM WITH THIS CAR, AND WHILE HE IS REPLACING THE SEAL HE WANTED TO CLEAN THE PCV SYSTEM AS WELL. I ASKED HIM TO DO WHAT IS NECESSARY TO REPAIR THE CAR. AFTER PAYING OVER $1000.00 MY MECHANIC TOLD ME THAT I MAY WANT TO CALL GM OR NHTSA AND TRY TO GET REIMBURSED BECAUSE THIS IS THE SAME SYSTEM THAT WAS RECALLED, JUST A YEAR OFF. MY WIFE CALLED GM, THE PERSON SHE SPOKE WITH AGREED THAT THERE MAY BE AN

ISSUE AND ASKED FOR ALL DOCUMENTATION, MY WIFE WAS SHOCKED WHEN THE 1ST REPRESENTATIVE TOLD HER THAT THEY KNEW ABOUT THE PROBLEM. THEN TOLD HER THAT A SENIOR REPRESENTATIVE WILL CALL HER BACK THE NEXT. TODAY THAT SENIOR REPRESENTATIVE CALLED HER BACK. I WAS HOME WHEN THIS HAPPENED. AFTER SHE EXPLAINED WHAT HAPPENED AND WHAT WAS DONE TO THE CAR THE FIST RESPONSE SHE GOT WAS "SINCE WE DIDN'T TAKE THE CAR TO A GM DEALERSHIP THERE WAS NOTHING THEY COULD DO" SHE THEN PUT ME ON THE PHONE AND I ASKED HIM THAT IF THE GM DEALER FIXED IT WOULD IT BE TAKEN CARE OF.? HE THEN CHANGED HIS TUNE TELLING ME THAT IT HAS NOT BEEN ESTABLISHED THAT A RECALL EXISTS. HOWEVER, HE DID SAY THAT NOTING CAN BE DONE JUST BECAUSE I READ SOMETHING ON THE INTERNET. I REPLIED THAT YES I WAS DOING RESEARCH, YES, I DID FIND OTHERS ARE HAVING THE SAME PROBLEM AS THE RECALL.IF OTHERS ARE HAVING THE SAME PROBLEM. WHY NOT ANOTHER RECALL?"

- NHTSA Complaint on March 10, 2019 for 2015 Chevrolet Equinox: "PURCHASED MY EQUINOX A YEAR AGO JUNE 2019. THE CAR WAS DOING FINE UP UNTIL ABOUT THE 2ND MONTH MARK I HAD IT. THE CAR BEGAN TO HAVE A VERY ROUGH AND JERKY STOP. I BROUGHT IT TO THE DEALER AND THEY FOUND NOTHING WRONG. I GOT A OIL CHANGE AT LEAST EVERY MONTH DUE TO MY JOB AND HAVING TO DRIVE FREQUENTLY. IN MARCH I NOTICED MY CAR WAS IDLING ROUGH BUT DROVE OK. WHILE LEAVING WORK I WAS STOPPED AT A RED LIGHT MY CAR STALLED AND THE ENGINE COMPLETELY TURNED OFF IN THE MIDDLE OF TRAFFIC. I TURNED IT OFF AND RESTARTED IT. COUPLE DAYS LATER IT DID IT TWICE AS I WAS BACKING OUT INTO TRAFFIC. I TOOK IT TO THE DEALERSHIP AND MY CAR WAS COMPLETELY EMPTY OF OIL EVEN THOUGH I HAD JUST GOTTEN AN OIL CHANGE. I NOW HAVE TO DO OIL CONSUMPTION TEST EVERY 2K MILES. MY CAR STILL SHIFTS ROUGH AT ACCELERATION AND DURING DOWNSHIFTING. I HAD TO HAVE MY CAMSHAFT SOLENOID SENSOR REPLACED AS WELL. MY CAR HAS 55K MILES."

- NHTSA Complaint on September 24, 2019 for 2015 Chevrolet Equinox: "OIL CONSUMPTION ISSUE. CHEVROLET'S DEFINITION OF OIL CONSUMPTION ISSUE IS USING A QUART (OR MORE) WITHIN 2000 MILES (OR LESS) . OTHER COMPANIES WOULD DEFINE THIS AS AN ISSUE BUT CHEVROLET DOES NOT SEE THIS AS AN ISSUE. MY CAR HAS SHUT OFF WHILE IN MOTION ON A MAIN ROAD 7-9 TIMES. IT HAS ALSO OCCURRED IN PARKING LOTS. I HAVE TO

ATTEMPT MULTIPLE TIMES FOR MY CAR TO STAY ON TO GET OFF OF THE ROADWAY. IT HAPPENS IN FORWARD AND REVERSE."

- NHTSA Complaint on February 1, 2021 for 2015 Chevrolet Equinox: "MY VEHICLE HAS CONSUMED MORE OIL THEN I CAN EVEN PHANTOM, TRADITIONALLY OIL IS SUPPOSED TO LAST 3K MILES AND WHEN YOU REGULARLY CHANGE IT YOU SHOULDN'T NOTICE MUCH CONSUMPTION IF ANY AT ALL, THIS VEHICLE NOT ONLY CONSUMES ON AVERAGE A QUART OF OIL EVERY 500 - 1K MILES BUT I AM ALSO NEVER ALERTED THAT MY OIL IS LOW. THIS IS DANGEROUS AS TYPICALLY WITH SYNTHETIC OILS COMING ALONG AND THE NEW RECOMMENDATION BEING 7500K MILES BEFORE OIL CHANGE I WOULD BE COMPLETELY DRIED UP IF I DID NOT CHECK MY DIP STICK REGULARLY. I ACTIVELY SEE SMOKE COMING FROM THE TAIL PIPE WHEN LEAVING A RED LIGHT AND CAN SMELL THE BURN WHEN EXITING THE VEHICLE, WHICH CAN'T BE GOOD FOR THE CATALYTIC CONVERTER. MY CAR WILL HAVE ROUGH/SURGING IDLE AT RED LIGHTS, HAS EVEN SHUT OFF AT ONE POINT COMPLETELY EVEN. I HAVE HAD TO REPLACE O2 SENSORS AND I CONTINUE TO ADD 1-2 QUARTS OF OIL BETWEEN OIL CHANGES TO KEEP UP WITH THE EXCESSIVE CONSUMPTION. THERE WAS A LAWSUIT CLAIMING THIS PROBLEM ONLY EFFECTED 2010-2013 EQUINOX HOWEVER I KNOW NUMEROUS EQUINOX OWNERS WITH MODELS NEWER LIKE MYSELF WITH THESE SAME ISSUES. GM SHOULD EXPAND ENDING WITH MODEL YEAR 2017 AND STOP HIDING BEHIND THE BUSH.

- NHTSA Complaint on March 1, 2021 for 2015 Chevrolet Equinox: "MY VEHICLE HAD A OIL CHANGE AT 86,000 MILES. I HIT 90,722 MILES . THE VEHICLE WAS RUNNING FINE AND WHEN I GOT OFF WORK AND TRIED TO START THE CAR IT STARTED BUT THEN SHUT OFF. I HAD NO CHECK ENGINE LIGHTS, NO LOW OIL LIGHT AND HAD A PERFECT DIAGNOSTICS REPORT ON MY ONSTAR, I HAD TO GET THE VEHICLE TOWED TO A DEALER PER ON STAR, AFTER SPEAKING TO THE DEALER I WAS INFORMED THE MOTOR BLEW UP BECAUSE IT JUMPED TIME AND DUMPED OIL. I WAS ALSO TOLD THIS IS A COMMON PROBLEM WITH THIS MOTOR BUT GM IS REFUSING TO FIX IT BECAUSE THE WARRANTY JUST WENT UP 6 MONTHS AGO. I HAVE BEEN TOLD BY SEVERAL SHOPS CHEVY KNOWS ABOUT THIS TIME CHAIN OR JUMPING TIME ISSUE AND IN MOST CASES A NEW MOTOR IS REQUIRED. I WOULD LIKE TO UNDERSTAND WHY NO WARNING LIGHTS CAME ON AND HOW OIL COULD DUMP AFTER HAVING

A OIL CHANGE 3,000 MILES GIVE OR TAKE ? AND WHY CHEVY
IS PASSING THE PROBLEM ONTO THE CUSTOMER.

- NHTSA Complaint on April 27, 2021 for 2015 Chevrolet Equinox:
  "CONSTANT BURNING OF OIL, UP TO 1 QUART IN LESS THAN
  1,000 MILES. HAD OIL CONSUMPTION TEST DONE DUE TO ALL
  THE NEGATIVE REVIEWS ON OIL CONSUMPTION ISSUES WITH
  THIS MOTOR, AND LIFETIME POWERTRAIN WARRANTY
  REFUSES TO COVER ANY REPAIRS THAT COULD BE
  ASSOCIATED WITH OIL CONSUMPTION."

- NHTSA Complaint on December 20, 2021 for 2015 Chevrolet Equinox:
  "Issue with oil consumption on this vehicle. Needs 2 quarts of new oil every
  2-3 weeks with moderate driving. Mechanics say this is a known issue with
  Chevrolet Equinox's since 2011. The only true fix is to replace the engine
  and even then the problem can reoccur with new engines. I have joined a
  Facebook page called "Terrain-Equinox Oil Consumption Recall" with
  thousands of members experiencing same issue. There is no assistance from
  dealerships to assist in covering repair costs. There was a limited recall for
  model year 2013 but same issues are present in 2014's and 2015's as well.
  There are also many complaints about on this issue on this bursa website.
  Looking for any assistance."

- NHTSA Complaint on June 26, 2022 for 2015 Chevrolet Equinox: "My car
  had no advance warning as was supposed to for low oil levels. I was driving
  highway speed during rush hour when I hear a loud bang my car jolts to a
  stop and I'm left stranded. The car was only 5 years old and 100,000 miles.
  The bang was the engine that blew due to a major oil consumption or leak
  issue with the 2.4 and the transmission also burnt and needed replaced as
  well. I bought used and did not even make the first payment."

- NHTSA Complaint on July 25, 2022 for 2016 Chevrolet Equinox: "The
  contact owns a 2016 Chevrolet Equinox. The contact stated while changing
  the engine oil, she noticed that the oil consumption was not normal. The
  contact stated that approximately two to three quarts of oil needed to be
  added every week. Additionally, the vehicle had stalled while driving up the
  driveway. The contact stated no warning lights were illuminated.
  Additionally, the engine was making a ticking sound while driving. The
  contact had taken the vehicle to an independent mechanic however, the
  vehicle was not diagnosed. The manufacturer had been informed of the
  failure and the contact was referred to a dealer to schedule a diagnostic test.
  The failure mileage was approximately 110,000."

- NHTSA Complaint on October 4, 2022 for 2017 Chevrolet Equinox: "We
  are experiencing excessive oil consumption problems with our 2017 Chevy
  Equinox that has a 2.4-liter Ecotec engine. We believe that the Engine
  replacements may be covered by a settlement so long as they can be traced
  directly to excessive oil consumption caused by defective piston rings. Can

34

you please provide information as to where to go to pursue our reimbursement? The engine knocked due to there being low oil and not realizing the defect in the engine. There were no warning lights or an indication that there was a problem until the engine made noise. The issue started in May of 2022 and we did a repair on it that cost $2468.00, however, that repair did not fix the problem and now it is going to a dealership for another repair for the same issue."

- NHTSA Complaint on October 4, 2022 for 2017 Chevrolet Equinox: "Per Mechanic my engine is burning through oil. When I went in for an oil change I was told I only had 1 quart left. I was informed this was a common issue with these engines at this time."

- NHTSA Complaint on January 2, 2023 for 2015 Chevrolet Equinox: "Low oil pressure light came on, all the oil had leaked out and the warning advised to turn engine off immediately. Issue is I could have gotten into an accident, as the vehicle could have locked up and shut off, why is this not recalled it is dangerous."

## IV. DESPITE KNOWLEDGE OF THE DEFECT, GM SOLD FAULTY AND UNSAFE VEHICLES, FAILED TO NOTIFY CLASS MEMBERS OF THE DEFECT AND FAILS TO REMEDY THE PROBLEM FOR CUSTOMERS.

107. By 2010, GM knew about the defect, yet it continued to sell these vehicles while concealing the defect from consumers.

108. GM has never notified owners of Class Vehicles of the defect or the inherent safety risks posed by the defect.

109. While GM has extended the warranty for MY 2010-2013 and provided repairs for those vehicles, GM refuses to notify the Class or offer repairs to MY 2014-2017 owners despite the fact that the engines are the same in all material respects.

110. Despite its knowledge of the Oil Consumption Defect, GM's policy when owners or lessees of Class Vehicles complain to GM specifically about that defect, is only to tell the customer to bring the vehicle in for a burdensome oil check, although GM has and had knowledge that there was excessive oil consumption as a result of utilizing faulty piston rings and related defects.

35

111.     GM has never disclosed the Oil Consumption Defect to Class Members. Instead, GM attempted to squelch public recognition of the Oil Consumption Defect by propagating the falsehood that the excessive oil consumption that drivers of the class vehicles were experiencing was "normal."

112.     GM has allowed drivers of the Class vehicles to continue driving those vehicles, despite knowing that they are consuming oil at an abnormally high rate, and has continued allowing drivers of the Class Vehicles to rely on the Oil Life Monitoring System, despite knowledge that this system does not give notice that the vehicle has less than the amount of oil necessary for proper engine lubrication and proper, safe operation. As a result, Class Vehicles suffer engine failure and engine damage, including spark plug fouling, ring wear, lifter collapse, bent pushrods, camshaft wear, valve wear, rod bearing wear, rod breakage, wristpin wear, wristpin breakage, crankshaft wear and main bearing or destruction and other forms of internal component wear/breakage due to unacceptable heat and friction levels and oil breakdown.

113.     GM has not recalled the Class Vehicles to repair the Oil Consumption Defect and has not offered to reimburse Class Vehicle owners and lessees who incurred costs relating to excessive oil consumption and related problems.

114.     Plaintiff and Class Members are reasonable consumers who do not reasonably expect their Class Vehicles to require the addition of several quarts of oil between regularly scheduled oil changes, safety risks, and engine failure.

115.     As a result of the Oil Consumption Defect, the value of the Class Vehicles has diminished, including without limitation the resale value of the Class Vehicles.

116.     And although GM provided extended warranty coverage to MY 2010-2013 vehicles, it has refused to provide similar extended warranty coverage to Class Vehicles, leaving Class Members to make expensive payments to remedy the Defect.

**B.     Tolling of the Applicable Limitations Period.**

117.     Plaintiff and Class Members could not have discovered through the exercise of reasonable diligence that their Class Vehicles were defective within the time period of any applicable statutes of limitation.

118.     Neither Plaintiff nor the other Class Members knew or could have known that the Class Vehicles were equipped with 2.4L Engines with the Oil Consumption Defect, which causes those engines to consume oil at an abnormally high rate and to sustain engine damage resulting therefrom.

119.     Further, GM attempted to squelch public recognition of the Oil Consumption Defect by propagating the falsehood that the excessive oil consumption that drivers of the class vehicles were experiencing was "normal." More than that, GM concealed from and failed to disclose to Plaintiff and the other Class members vital information about the Oil Consumption Defect described herein.

120.     Because the OPW systems did not work reliably (or at all) on the Class Vehicles, and GM knew or was reckless in not knowing that this was the case, its instruction to customers to not take their vehicles to the dealer for inspection if the OLM warnings did not appear is tantamount to a deliberate concealment of the defect from Class Vehicle owners.

121.     GM kept Plaintiff and the other Class members ignorant of vital information essential to the pursuit of their claims. As a result, neither Plaintiff nor the other Class members could have discovered the defect, even upon reasonable exercise of diligence.

122.     Plaintiff and the other Class members justifiably relied on GM to disclose the Oil Consumption Defect in the Class Vehicles that they purchased or leased, because that defect was hidden and not discoverable through reasonable efforts by Plaintiff and the other Class members.

123.     Thus, the running of all applicable statutes of limitation have been suspended with respect to any claims that Plaintiff and the other Class members have sustained as a result of the defect.

# CLASS ACTION ALLEGATIONS

124.    Plaintiff brings this lawsuit individually and as a class action on behalf all others similarly situated pursuant to Federal Rules of Civil Procedure ("Rule") 23(a), (b)(2), and/or (b)(3).   This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of Rule 23.

125.    The Class is defined as:

> *All current and former owners or lessees of 2014 through 2017 model year Chevrolet Equinox and GMC Terrain vehicles equipped with a 2.4 liter engine who reside in and/or purchased their vehicles in the State of Missouri.*

126.    Excluded from the Class are: (1) GM, any entity or division in which GM has a controlling interest, and its legal representatives, officers, directors, assigns, and successors; (2) the Judge to whom this case is assigned and the Judge's staff; and (3) those persons who have suffered personal injuries as a result of the facts alleged herein. Plaintiff reserves the right to amend the Class definition if discovery and further investigation reveal that the Class should be expanded or otherwise modified.

127.    Numerosity: Although the exact number of Class Members is uncertain and can only be ascertained through appropriate discovery, the number is great enough such that joinder is impracticable. The disposition of the claims of these Class Members in a single action will provide substantial benefits to all parties and to the Court. The Class Members are readily identifiable from information and records in GM's possession, custody, or control, as well as from records kept by the Department of Motor Vehicles of various states.

128.    Typicality: The claims of the representative Plaintiff are typical in that Plaintiff, like all Class Members, purchased and/or leased a Class Vehicle designed, manufactured, and distributed by GM with the Oil Consumption Defect. Plaintiff, like all Class Members, has been damaged by GM's misconduct in that, inter alia, they have incurred or will continue to incur the

38

cost of purchasing motor oil to replace the oil consumed by his defective engine. Furthermore, the factual bases of GM's misconduct are common to all Class Members and represent a common thread of fraudulent, deliberate, and negligent misconduct resulting in injury to all Class Members.

129.    Commonality: There are numerous questions of law and fact common to Plaintiff and Class Members that predominate over any individual questions. These common legal and factual issues include the following:

- whether the Class Vehicles and their engines are defectively designed such that they are not suitable for their intended use;

- whether GM was aware of the Oil Consumption Defect;

- whether GM has a duty to disclose the defective nature of the Class Vehicles and the Oil Consumption Defect to Plaintiffs and Class Members;

- whether GM violated the Missouri Merchandising Practices Act when it sold Class Vehicles that suffered from the Oil Consumption Defect and/or failed to notify Class Members and remedy the defect or pay for expensive repairs.

130.    Adequate Representation: Plaintiff will fairly and adequately protect the interests of Class Members. Plaintiffs have retained attorneys experienced in the prosecution of class actions, including consumer and product defect class actions, and Plaintiff intends to prosecute this action vigorously.

131.    Predominance and Superiority: Plaintiff and Class Members have all suffered and will continue to suffer harm and damages as a result of GM's unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Absent a class action, Class Members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law. Because of the relatively small size of Class Members' individual claims, it is likely that few Class Members could afford to seek legal redress for GM's misconduct. Absent a class action, Class Members will

39

continue to incur damages, and GM's misconduct will continue without remedy. Class treatment of common questions of law and fact would also be a superior method to multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the courts and the litigants and will promote consistency and efficiency of adjudication.

## CAUSE OF ACTION
### Violation of the Missouri Merchandising Practices Act (MMPA)
### Mo. Rev. Stat. §§ 407.010 *et seq.*

132.     Plaintiff, on behalf of herself and the proposed Class, hereby re-alleges the paragraphs above as if fully set forth herein.

133.     The Missouri Merchandising Practices Act ("the MMPA") provides that "[t]he act, use or employment by any person of any deception . . . [or] unfair practice, or the concealment . . . of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce . . . is declared to be an unlawful practice."  Mo. Rev. Stat. § 407.020.1.

134.     Under the MMPA, the term "merchandise" is broadly defined to include "any objects, wares, goods, commodities, intangibles, real estate or services."  Mo. Rev. Stat. § 407.020.4. The Class Vehicles are "merchandise" within the scope of the MMPA.

135.     The MMPA authorizes private causes of action, and class actions.  Mo. Rev. Stat. §§ 407.025.1; 407.025.2. Plaintiff and Class Members are individuals entitled to bring suit and recover under the MMPA.

136.     When GM designed, manufactured, offered for sale, warranted and sold the Class Vehicles, it was involved in the conduct of trade and commerce under the MMPA.

137.     When GM designed, manufactured, offered for sale, warranted and sold the Class Vehicles, it violated the MMPA because it did not disclose the Oil Consumption Defect that plagued these vehicles, despite the fact that GM was aware of the defect, or should have been

40

aware, at the time these vehicles were sold and despite the fact that GM knew the Oil Consumption Defect made the vehicles less safe, less reliable, less valuable and harder to resell than any reasonable consumer would expect them to be.  *See* Mo. Rev. Stat. § 407.020.1.

138.    When GM failed to notify Class Members of the safety defect and failed to honor warranty claims, extend the warranty period as it did for other vehicle owners, and/or otherwise fail to remedy the defect, Plaintiff and the Class members suffered injury-in-fact as a direct result of GM's violations of the MMPA in that they have been denied the use of their Class Vehicles, expended money on replacements, repairs, and damages to their Class Vehicles and have automobiles which are essentially valueless  as a result of GM's conduct.

139.    GM's scheme and concealment of the true characteristics of the Oil Consumption Defect were material to Plaintiffs and the Class. Had they known the truth, Plaintiff and the Class would not have purchased or leased the Class Vehicles, or—if the Class Vehicles' true nature had been disclosed and mitigated, and the Vehicles rendered legal to sell—would have paid significantly less for them.

140.    Plaintiff and Class members had no way of discerning that GM's representations were false and misleading, or otherwise learning the facts that GM had concealed or failed to disclose, because GM had exclusive knowledge of the information surrounding the Oil Consumption Defect and did not alert Plaintiff and Class Members to said information prior to their purchase of their Class Vehicles or anytime thereafter. Plaintiff and Class members did not, and could not, unravel GM's deception on their own.

141.    GM's conduct would cause a reasonable person to enter into the transaction that resulted in damages.

142.    In entering into the transaction that resulted in damages—in purchasing the Class

Vehicles—Plaintiff and Class Members acted as reasonable consumers would act in light of all circumstances, in particular the circumstance that GM did not disclose and in fact concealed the existence of the Oil Consumption Defect.

## RELIEF REQUESTED

143. Plaintiffs, individually and on behalf of all others similarly situated, respectfully request that the Court enter judgment against GM, and accordingly request the following:

- An order certifying the proposed Class and designating Plaintiff as named representative of the Class and designating the undersigned as Class Counsel;

- A declaration that GM is financially responsible for notifying all Class Members about the defective nature of the Class Vehicles and their engines;

- An award to Plaintiffs and Class Members of compensatory, actual, and punitive damages, including interest, in an amount to be proven at trial;

- An award of attorneys' fees and costs pursuant to applicable law;

- An award of pre-judgment and post-judgment interest, as provided by law;

- Leave to amend the Complaint to conform to the evidence produced at trial; and

- Such other relief as may be appropriate under the circumstances.

## DEMAND FOR JURY TRIAL

Plaintiff, on behalf of themselves and all others similarly situated, hereby demand a trial by jury as to all matters so triable.

Dated: January 06, 2023

Respectfully Submitted,

**WILLIAMS DIRKS DAMERON LLC**

_/s/ Eric L. Dirks_____
Eric L. Dirks MO #54921
Matthew L. Dameron MO #52093
1100 Main Street, Suite 2600

42

Kansas City, Missouri 64105
Tel:   (816) 945-7110
Fax:   (816) 945-7118
dirks@williamsdirks.com
matt@williamsdirks.com